UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WAYNE A. SCHERGER, | ) | |
| d/b/a PROTECT PAINTERS | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. 04-12039-WGY |
| | ) | |
| SCOTT ESTABROOKS and | ) | |
| JTC & COMPANY, INC. | ) | |
| Defendants | ) | |

## AFFIDAVIT OF JOHN J. BURKE

I, John J. Burke, Esq., under oath, depose and state as follows:

1.    I am counsel to Defendant Scott Estabrooks in the above-referenced matter.

2.    I submit the within affidavit in support of Defendant Scott Estabrooks' Motion To Dismiss/Motion For Summary Judgment On Count I Of Complaint In Light Of Pending Arbitration Proceedings, Or, In The Alternative, (1) Motion To Stay Case Pending Completion Of Pending Arbitration Proceedings (2) Motion To Compel Plaintiff To Seek To Assert Claims Set Forth In Count I Of Complaint In Pending Arbitration Proceedings And (3) Motion For More Definite Statement.

3.    I have attached hereto true and genuine copies of the following documents.

**Exhibit A**    Docket Entries, *Wayne A. Scherger d/b/a Protect Painters v. Scott Estabrooks and JTC & Company, Inc.*, Middlesex Superior Court, Civil Action No. 03-3440

**Exhibit B**    Complaint, *Wayne A. Scherger d/b/a Protect Painters v. Scott Estabrooks and JTC & Company, Inc.*, Middlesex Superior Court, Civil Action No. 03-3440

**Exhibit C**    Excerpt from Franchise Agreement

Signed under the pains and penalties of perjury this 20th day of December, 2004.

John J. Burke

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail on December 20, 2004.

John J. Burke

AOTC Information Center

# Commonwealth of Massachusetts
## MIDDLESEX SUPERIOR COURT
## Case Summary
## Civil Docket

## Scherger d/b/a v Estabrooks et al

Details for Docket: MICV2003-03440

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2003-03440 | **Caption:** | Scherger d/b/a v Estabrooks et al |
| **Filing Date:** | 08/19/2003 | **Case Status:** | Needs damage assessment scheduled |
| **Status Date:** | 04/14/2004 | **Session:** | Cv H (8A Cambridge) |
| **Lead Case:** | NA | **Case Type:** | Complex |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 06/14/2004 |
| **Service Date:** | 11/17/2003 | **Disposition:** | 10/12/2004 |
| **Rule 15:** | 01/16/2004 | **Rule 12/19/20:** | 01/16/2004 |
| **Final PTC:** | 08/13/2004 | **Rule 56:** | 07/14/2004 |
| **Answer Date:** | 01/16/2004 | **Jury Trial:** | NO |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2003-03440 | **Caption:** | Scherger d/b/a v Estabrooks et al |
| **Filing Date:** | 08/19/2003 | **Case Status:** | Needs damage assessment scheduled |
| **Status Date:** | 04/14/2004 | **Session:** | Cv H (8A Cambridge) |
| **Lead Case:** | NA | **Case Type:** | Misc contract |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 06/14/2004 |
| **Service Date:** | 11/17/2003 | **Disposition:** | 10/12/2004 |
| **Rule 15:** | 01/16/2004 | **Rule 12/19/20:** | 01/16/2004 |
| **Final PTC:** | 08/13/2004 | **Rule 56:** | 07/14/2004 |
| **Answer Date:** | 01/16/2004 | **Jury Trial:** | NO |

## Parties Involved

5 Parties Involved in Docket: MICV2003-03440

AOTC Information Center

| **Party Involved:** | | **Role:** | Defendant |
| --- | --- | --- | --- |
| **Last Name:** | Estabrooks | **First Name:** | Scott |
| **Address:** | 161 Perham Street | **Address:** | |
| **City:** | West Roxbury | **State:** | MA |
| **Zip Code:** | 02132 | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Defendant |
| --- | --- | --- | --- |
| **Last Name:** | JTC & Company, Inc.. | **First Name:** | |
| **Address:** | 254 Washington Street | **Address:** | |
| **City:** | Wellesley Hills | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Doing business as (alias) |
| --- | --- | --- | --- |
| **Last Name:** | Protect Painters | **First Name:** | |
| **Address:** | 831 Beacon Street #322 | **Address:** | |
| **City:** | Newton Center | **State:** | MA |
| **Zip Code:** | 02459 | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Doing busnss as (alias) |
| --- | --- | --- | --- |
| **Last Name:** | Protect Painters | **First Name:** | |
| **Address:** | 831 Beacon Street #322 | **Address:** | |
| **City:** | Newton Center | **State:** | MA |
| **Zip Code:** | 02459 | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Plaintiff |
| --- | --- | --- | --- |
| **Last Name:** | Scherger d/b/a | **First Name:** | Wayne A. |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

AOTC Information Center

Page 3 of 5

## Attorneys Involved

3 Attorneys Involved for Docket: MICV2003-03440

| Attorney Involved: | | Firm Name: | BURK13 |
|---|---|---|---|
| **Last Name:** | Burke III | **First Name:** | John J |
| **Address:** | 30 Massachusetts Avenue | **Address:** | Suite 2 |
| **City:** | North Andover | **State:** | MA |
| **Zip Code:** | 01845 | **Zip Ext:** | |
| **Telephone:** | 978-681-1570 | **Tel Ext:** | |
| **Fascimile:** | 978-681-1572 | **Representing:** | JTC & Company, Inc.., (Defendant) |

| Attorney Involved: | | Firm Name: | |
|---|---|---|---|
| **Last Name:** | Crow | **First Name:** | Cheri L |
| **Address:** | 23 Walkers Brook Drive | **Address:** | |
| **City:** | Reading | **State:** | MA |
| **Zip Code:** | 01867 | **Zip Ext:** | |
| **Telephone:** | 781-944-8470 | **Tel Ext:** | |
| **Fascimile:** | 781-944-8495 | **Representing:** | Scherger d/b/a, Wayne A. (Plaintiff) |

| Attorney Involved: | | Firm Name: | BURK13 |
|---|---|---|---|
| **Last Name:** | Burke III | **First Name:** | John J |
| **Address:** | 30 Massachusetts Avenue | **Address:** | Suite 2 |
| **City:** | North Andover | **State:** | MA |
| **Zip Code:** | 01845 | **Zip Ext:** | |
| **Telephone:** | 978-681-1570 | **Tel Ext:** | |
| **Fascimile:** | 978-681-1572 | **Representing:** | Estabrooks, Scott (Defendant) |

## Calendar Events

1 Calendar Events for Docket: MICV2003-03440

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 01/14/2004 | 14:00 | Motion/Hearing: Rule12 to Dismiss | H | Event held as schedul |

AOTC Information Center

# Full Docket Entries

35 Docket Entries for Docket: MICV2003-03440

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 08/19/2003 | 1 | Complaint & civil action cover sheet filed |
| 08/19/2003 | | Origin 1, Type A99, Track F. |
| 10/29/2003 | 2 | Defendant Scott Estabrooks's MOTION to Dismiss for Lack of |
| 10/29/2003 | 2 | Jurisdiction Over the Subject Matter, 12(b)(1), Affidavit in Support, |
| 10/29/2003 | 2 | Affidavit of John J. Burke in Compliance with Rule 9A. |
| 10/29/2003 | 3 | Defendant Scott Estabrooks's MOTION to Dismiss for Improper Venue |
| 10/29/2003 | 3 | 12(b)(3), Affidavit of Counsel in Support. |
| 10/29/2003 | 4 | Defendant Scott Estabrooks's MOTION to Dismiss for Failure to State a |
| 10/29/2003 | 4 | Claim upon which Relief can be granted, 12(b)(6), Affidavit of |
| 10/29/2003 | 4 | Counsel in Support. |
| 10/29/2003 | 5 | Defendant JTC & Company, Inc..'s MOTION to Dismiss for Lack of |
| 10/29/2003 | 5 | Jurisdiction Over the Subject Matter, 12(b)(1), Affidavit in Support, |
| 10/29/2003 | 5 | Affidavit of John J. Burke in Compliance with Rule 9A. |
| 10/29/2003 | 6 | Defendant JTC & Company, Inc..'s MOTION to Dismiss for Improper Venue |
| 10/29/2003 | 6 | 12(b)(3), Memorandum in Support, Affidavit of Counsel in Support. |
| 10/29/2003 | 7 | Defendant JTC & Company, Inc..'s MOTION to Dismiss for Failure to |
| 10/29/2003 | 7 | State a Claim upon which Relief can be granted, 12(b)(6), Affidavit |
| 10/29/2003 | 7 | of Counsel in Support. |
| 01/14/2004 | | Motion (P#7) DENIED without prejudice (Muse, J.) notices mailed |
| 01/14/2004 | | January 16, 2004 |
| 01/14/2004 | | Motion (P#6) DENIED without prejudice (Muse, J.) notices mailed |
| 01/14/2004 | | January 16, 2004 |
| 01/14/2004 | | Motion (P#5) DENIED without prejudice (Muse, J.) notices mailed |
| 01/14/2004 | | January 16, 2004 |
| 01/14/2004 | | Motion (P#4) DENIED without prejudice (Muse, J.) notices mailed |
| 01/14/2004 | | January 16, 2004 |
| 01/14/2004 | | Motion (P#3) DENIED without prejudice (Muse, J.) notices mailed |
| 01/14/2004 | | January 16, 2004 |
| 01/14/2004 | | Motion (P#2) DENIED without prejudice (Muse, J.) notices mailed |
| 01/14/2004 | | January 16, 2004 |
| 04/14/2004 | 8 | Default re: Scott Estabrooks; JTC & Company, Inc.. (no answer by |
| 04/14/2004 | 8 | 1-88 deadline); Pltf directed to move for appropriate judgement by |
| 04/14/2004 | 8 | 05/14/2004. Copies mailed. |
| 04/14/2004 | | Case status changed to 'Needs damage assessment scheduled' at answer |
| 04/14/2004 | | deadline review |

AOTC Information Center

COMMONWEALTH OF MASSACHUSETTS



MIDDLESEX, SS

CIVIL ACTION
NO.:      **.03–3440**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WAYNE A SCHERGER,
    D/B/A PROTECT PAINTERS
       Plaintiff

v.

SCOTT ESTABROOKS and JTC & COMPANY, INC.,
    Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VERIFIED COMPLAINT

1. The plaintiff, Wayne A. Scherger d/b/a Protect Painters ("Protect Painters"), has a principal place of business at 831 Beacon Street, #322, Newton Center, Massachusetts 02459.

2. Protect Painters is in the business of operating its own and franchising other painting and decorating businesses under the trade names and trade marks "Protect" and "Protect Painters".

3. The defendant, Scott W. Estabrooks ("Estabrooks") is a citizen of Massachusetts residing at 161 Perham Street, West Roxbury, MA  02132.

4. The defendant, JTC & Company, Inc. ("JTC"), is a Massachusetts corporation with a principal place of business at 254 Washington Street, Wellesley Hills, Massachusetts.

5. Estabrooks signed a Franchise Agreement with Protect Painters on September 19, 1999 to be effective from January 1, 2000 through December 31, 2002.

6. Estabrooks had already been a franchisee of Protect Painters since 1996.



7. Estabrooks' Franchise Agreement with Protect Painters expired on December 31, 2002 and he chose not to renew the agreement.

8. Prior to the actual expiration of the Agreement, Estabrooks informed Protect Painters that he would not be renewing his Agreement but he would be working for Jack and Terry Custom Homes in building custom homes and that he would not be working in a competitive painting business.

9. JTC. is a painting and decorating company that is a direct competitor of Protect Painters in the Massachusetts market.

10. Estabrooks went to work for Defendant JTC after his Franchise Agreement expired.

11. Estabrooks has been and is working for JTC in the painting aspect of JTC's business and is soliciting, estimating, and executing paint jobs for JTC in the area that constituted his franchise territory while he was a franchisee of Protect Painters.

12. Estabrooks has been soliciting business from Protect Painters' customers using his knowledge and relationship with those customers in his former territory.

13. As a part of Estabrooks' Franchise Agreement with Protect Painters, he agreed to and signed certain restrictive covenants. A copy of these restrictive covenants signed by Estabrooks as Appendix III to the Franchise Agreement is attached as Exhibit 1.

14. Estabrooks' Agreement with Protect Painters requires that he not engage in any Competing Painting Business as that term is defined in the Agreement for a period of one (1) year from the expiration of his Franchise Agreement. See Exhibit 1 at ¶ 2.

15. Under the terms of the Agreement signed by Estabrooks, he was and is prohibited from working as an employee or independent contractor or franchisee in the painting business, in much of Massachusetts (and other states which have Protect Painters franchises) until January 1, 2004. See Exhibit 1.

16. The noncompete and confidentiality provisions of the Franchise Agreement and Appendices survived the expiration of the Franchise Agreement. See Exhibit 1.

17. Estabrooks is prohibited from soliciting Protect Painter customers or performing services for anyone who was a customer of Protect Painters. See Exhibit 1 at ¶ 4.

18. Estabrooks has solicited Protect Painters' clients claiming that he has merged his Protect Painters' business with JTC.

19. Estabrooks has provided potential customers with several pages of references consisting of Protect Painters' clients.

2



20. The restrictive covenants of the Franchise Agreement are reasonable and necessary to protect the legitimate business interests of Protect Painters and its franchisees.

21. The restrictive covenants of the Franchise Agreement are reasonable in time and geography.

22. JTC hired Estabrooks knowing that Estabrooks would be in violation of his restrictive covenants by working for JTC.

23. JTC has kept Estabrooks in its employment even after receiving a demand from Protect Painters to terminate Estabrook's employment based on his restrictive covenants.

24. JTC has had and continues to have Estabrooks working in the painting aspect of JTC's business, soliciting paint jobs, estimating paint jobs and painting for customers who previously used Protect Painters.

25. JTC has had and continues to have Estabrooks working in the painting aspect of JTC's business, soliciting paint jobs, estimating paint jobs and painting in Estabrook's former Protect Painters' territory.

26. Estabrooks has shared confidential information belonging to Protect Painters with JTC, such as the identity of Protect Painters' mailing house.

27. JTC now distributes its advertising materials through the same mailing house that has been used by Protect Painters for years.

28. Estabrooks had knowledge of this mailing house through his relationship with Protect Painters.

29. This mailing house is relatively new and unknown and the chances of JTC finding and using this mailing house without learning of it through Estabrook is minuscule.

30. Protect Painters has an advertising brochure that it mass mails to Massachusetts households about its services. An original of this brochure is attached as Exhibit 2.

31. Estabrooks has provided JTC with advertising material belonging to Protect Painters for JTC to copy and use.

32. Estabrooks has provided JTC with forms and contracts belonging to Protect Painters for JTC to copy and use.

33. By doing so, Estabrooks has violated the restrictive covenants of his Franchise Agreement. See Exhibit 1 at ¶ 3.

3



34. Under the Franchise Agreement, Estabrooks was and continues to be obligated to follow the Warranty Manual and to fulfill the express and implied warranties for the work he performed as a franchisee of Protect Painters.

35. Estabrooks performed his work in a shoddy and poor manner in 2201 and 2002, while he was planning to leave Protect Painters.

36. Protect Painters has received a much larger than normal number of complaints from Estabrooks' customers for his work in 2001 and 2002.

37. Estabrooks did not perform the quality of work required under the Franchise Agreement and the contracts with his customers.

38. As a result, Estabrooks has harmed the Protect Painters trademark in breach of his Franchise Agreement.

39. Estabrooks failed to enter into the Limited Two Year Warranty with his customers as required by the Franchise Agreement.

40. As a result, in order to protect its goodwill and the value of its trademark, Protect Painters has been forced to perform repair work that would not have been covered under the written warranty.

## COUNT I. BREACH OF CONTRACT
(Against Defendant Scott Estabrooks)

41. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

42. Estabrooks has breached the restrictive covenants of his Franchise Agreement with Protect Painters by competing with Protect Painters and its franchisees.

43. As a result, Protect Painters has suffered and continues to suffer damages.

## COUNT II. BREACH OF CONTRACT
(Against Defendant Scott Estabrooks)

44. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

45. Estabrooks has breached the restrictive covenants of his Franchise Agreement with Protect Painters by soliciting business from clients of Protect Painters and its franchisees.

4

46. As a result, Protect Painters has suffered and continues to suffer damages.



### COUNT III. BREACH OF CONTRACT
(Against Defendant Scott Estabrooks)

47. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

48. Estabrooks has breached the restrictive covenants of his Franchise Agreement with Protect Painters by using trade secrets and confidential business information of Protect Painters.

49. As a result, Protect Painters has suffered and continues to suffer damages.

### COUNT IV. BREACH OF CONTRACT
(Against Defendant Scott Estabrooks)

50. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

51. Estabrooks has breached the restrictive covenants of his Franchise Agreement with Protect Painters by revealing trade secrets and confidential business information of Protect Painters to JTC.

52. As a result, Protect Painters has suffered and continues to suffer damages.

### COUNT V. MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL BUSINESS INFORMATION
(Against Defendant Scott Estabrooks)

53. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

54. Estabrooks had and has a common law duty to maintain the confidentiality and secrecy of Protect Painters' trade secrets and confidential business information.

55. Estabrooks has misappropriated Protect Painters' trade secrets and confidential business information.

56. Estabrooks has willfully and maliciously misappropriated Protect Painters' trade secrets and confidential business information.

57. Estabrooks has breached the common law rights of Protect Painters by revealing trade secrets and confidential business information regarding Protect Painters to JTC.

5

58. As a result, Protect Painters has suffered and continues to suffer damages.



## COUNT VI. BREACH OF CONTRACT
(Against Defendant Scott Estabrooks)

59. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

60. Estabrooks breached his Franchise Agreement with Protect Painters by failing to use the Limited Two Year Warranty required by the Franchise Agreement.

61. As a result, Protect Painters has suffered and continues to suffer damages.

## COUNT VII. BREACH OF CONTRACT
(Against Defendant Scott Estabrooks)

62. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

63. Estabrooks breached his Franchise Agreement with Protect Painters by failing to fulfill the express and implied warranties for the work he performed as a franchisee of Protect Painters.

64. As a result, Protect Painters has suffered and continues to suffer damages.

## COUNT VIII. BREACH OF CONTRACT
(Against Defendant Scott Estabrooks)

65. Plaintiff incorporates by reference its allegations in paragraphs 1-40.

66. Estabrooks accepted a deposit for a painting job in Protect Painters' name in late summer 2002 to paint a house in the summer of 2003.

67. At the time he took the deposit, Estabrooks knew that he would not be performing the service.

68. Estabrooks has failed to return the deposit or to perform the work.

69. Estabrooks' actions have caused damage to Protect Painters' trademark.

70. As a result, Protect Painters has suffered and continues to suffer damages.



## COUNT IX. INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP
### (Against Defendant JTC & Company, Inc.)

71.    Plaintiff incorporates by reference its allegations in paragraphs 1-40.

72.    JTC has intentionally interfered with Protect Painters' contract with Estabrooks.

73.    JTC has no justification or privilege to cause Estabrooks to breach his Franchise
Agreement with Protect Painters.

74.    As a result, Protect Painters has suffered and continues to suffer damages.

## COUNT X. VIOLATION OF M.G.L. c. 93A, § 11
### (Against Defendant JTC & Company, Inc.)

75.    Plaintiff incorporates by reference its allegations in paragraphs 1-40.

76.    JTC has engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A,
§ 2.

77.    As a result, Protect Painters has suffered and continues to suffer damages.

## COUNT XI. MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL BUSINESS INFORMATION
### (Against Defendant JTC & Company, Inc.)

78.    Plaintiff incorporates by reference its allegations in paragraphs 1-40.

79.    JTC knew that its use of Protect Painters' customer lists, mailing house, and other trade
secrets and confidential business information was derived from Estabrooks in violation of
his common law duties.

80.    JTC has willfully and maliciously misappropriated Protect Painters' trade secrets and
confidential business information.

81.    As a result, Protect Painters has suffered and continues to suffer damages.

WHEREFORE, the Plaintiff demands:

1.    Temporary and Permanent Injunctive Relief against Defendant Estabrooks;

7

2. Temporary and Permanent Injunctive Relief against Defendant Estabrooks;

3. Judgment against Defendant Estabrooks;

4. Judgment against Defendant JTC;

5. Compensatory Damages against Defendant JTC;

6. Liquidated Damages of Twelve Thousand Dollars ($12,000.00) per breach of contract from Defendant Estabrook;

7. Costs;

8. Attorney's Fees;

9. Double or Treble Damages under M.G.L. c. 93A, § 11 against Defendant JTC;

10. Punitive Damages against Defendant JTC;

11. Any and all other relief available and deemed meet and just by the Court.

Wayne A. Scherger d/b/a Protect Painters
By his Attorney,

Cheri L. Crow, Esq.  BBO #106830
23 Walkers Brook Drive
Reading, MA  01867
(781) 944-8470

8

COPY

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _29th_ DAY OF
JULY, 2003.

Wayne A. Scherger
d/b/a Protect Painters

Commonwealth of Massachusetts
Middlesex, ss.

Subscribed and sworn to before me this 29th day of July, 2003 by Wayne A. Scherger, who is
personally known to me.

Cheri L. Crow
Notary Public
My Commission expires: May 27, 2005

9



**APPENDIX III    RESTRICTIVE COVENANTS**

1.    **Interpretation:**  In this Appendix, including in this section.

    (a)    All capitalized words have the meanings assigned to them in the Franchise Agreement or in this section;

    (b)    "Painting Business" means any business which involves painting interiors and exteriors of residential, commercial, or industrial buildings.

    (c)    "Competing Painting Business" means any Painting Business located or to any extent carried on within:

        i.    the Franchisee's Franchise Area;
        ii.    the Franchise Area of anyone franchised by the Franchisor to carry on a painting business;
        iii.    10 miles from the boundaries of any Franchise Area mentioned in paragraph (a) or (b) above;

    (d)    "Engage in any Competing Painting Business" means to be involved directly or indirectly to any extent in any Competing Painting Business, including, without limitation, be the proprietor of, or be a partner, employee, shareholder, promoter, franchisor, licensor, or financier of or a consultant or advisor to any firm or corporation which is engaged in, any Competing Painting Business.

    (e)    "Confidential Information" means all types of confidential information divulged to or obtained by the Franchisee as a result of his/her being a Franchisee of the Franchisor including, without limitation, all methods, systems, processes, trade secrets, Manuals, customer lists, and supplier lists.

    (f)    The "Special Covenants" mean the Franchisee's covenants in sections 2, 3, 4 and 5 of this Appendix.

2.    **Non-Competition:**  The Franchisee shall not engage in any Competing Painting Business during the Franchise Period nor for a period of one (1) year from the expiration hereof.

3.    **Non-Disclosure:**  Except as expressly permitted by the Franchise Agreement, the Franchisee shall not during the Franchise Period nor for a period of one year (1) from the expiration thereof, disclose to any third party and Confidential Information obtained by him or her while a Franchisee.

4.    **Non-Solicitation:**  The Franchisee shall not during the Franchise Period nor for a period of one year (1) from the expiration thereof:

    (a)    Solicit or induce any person who was an employee of the Franchisee or any other franchisee during the Franchise Period, to perform services for a Painting Business; or

    (b)    Solicit as a customer for a Painting Business, or perform services as part of a Painting Business for any person, firm, or company who, during the Franchise Period, either was a customer of the Franchisee or who received a painting estimate/proposal for painting from the Franchisee.

5.    **Return of Materials:**   The Franchisee promises to return to the Franchisor, forthwith upon the expiration of the Franchise Period or upon an earlier termination of the Franchise Agreement, all printed and audio-visual instructional material supplied by the Franchisor, including without limitation, the   Operation Manual(s), Manager's Working Binder, Client Manual, Warranty Manual/Records, Landed proposals (including rough estimate sheets) and all other material concerning the procedures, techniques and methods of the Franchisor.

6.    **Restrictions upon Employees of the Franchisee:**        The Franchisee agrees to cause each of its employees, at the time of their employment, to execute a Secrecy and Confidentiality Agreement in such form as is prescribed by the Franchisor and to use its best efforts to prevent any such person from violating such agreement, to notify Franchisor of any known  violations of such agreement and to cooperate with the Franchisor to protect the rights and to the extent not barred by applicable law, to terminate the employment of any person who knowingly breaches the such agreement.

7.    **Acknowledgment of Corporate Franchise:**        In the event the Franchisee is a corporation, the Franchisee covenants and agrees to deliver to the Franchisor at such time as it may request, the written acknowledgement of such directors, officers, shareholders or employees of the Franchisee, as the as the Franchisor shall in its discretion determine, acknowledging that they have reviewed the provisions of this Appendix and that they agree to abide by and be bound by all such provisions.

Exhibit 1
15                                          Initials  LT



8.  **Acknowledgements:**   The Franchisee understands and acknowledges that:

   (a)   the Special Covenants are vitally important to the Franchisor, the Franchisee and the Franchisor's other franchise

   (b)   the Franchisor requires that all of its franchisees sign the Special Covenants;

   (c)   the Franchisor's franchising network cannot successfully operate to the benefit of the Franchisor and all franchis unless the Franchisor can require that the franchisees strictly comply with the Special Covenants;

   (d)   if the Franchisor cannot stop franchisees from breaching the Special Covenants, the benefits contracted for by franchisees when agreeing to become franchisees will be severely diminished;

   (e)   therefore these Special Covenants are for the mutual benefit of the Franchisor, the Franchisee and all oth franchisees;

   (f)   should the Franchisee or any other franchisee breach the Special Covenants, the Franchisor, its system and franchisees will suffer both financial loss and loss of goodwill; and

   (g)   the Franchisor fully intends to enforce the Special Covenants.

9.  **Enforcement:**   The Franchisee therefore agrees that:

   (a)   the Special Covenants are reasonable and necessary to protect the interests of the Franchisor, the Franchisee an all the other franchisees; and

   (b)   the integrity of the franchising network requires that the Franchisor be able to stop franchisees from breaching th Special Covenants; and

10.  **Further Provisions:**   The Franchisee agrees that:

   (a)   the Special Covenants shall be binding on and enforceable against him/her even if the Franchise Agreement i terminated by the Franchisor during the Franchise Period;

   (b)   the Special Covenants are reasonable in their entirety. However, if the Special Covenants or any part thereof ar found by a court of competent jurisdiction to be invalid or unenforceable to any extent, the invalid or unenforceable part shall be considered as severable from the remainder of the Special Covenants, and the remainder shall remain valid and enforceable; and

   (c)   the Franchisor may assign all or any part of the benefit of the Special Covenants.

11.  **Remedies:**

   (a)   Liquidated Damages - The Franchisor and Franchisee agree that the damages the Franchisor will suffer as a result of any breach of the covenants contained in paragraphs 2, 3, and 4 of this Appendix III will be difficult and time consuming to calculate. Accordingly, the Franchisor and the Franchisee agree that the Franchisee shall pay the sum of twelve thousand ($12,000) dollars to the Franchisor as liquidated damages for any breach of the covenants contained in said paragraphs 2, 3 and 4, said liquidated damages being in lieu of any further monetary damages claimed by the Franchisor.

   (b)   Injunctive Relief - In addition to the liquidated damages described in paragraph 11 (a) above, the Franchisor shall be entitled to obtain injunctive relief restraining the Franchisee from continuing to breach the covenants contained in paragraph 3 of this Appendix III.

12.  **Arbitration:**   Any controversy or claim arising out of, or relating to, this Appendix III or breach thereof shall be settled by arbitration, in accordance with the governing rules of a recognized arbitration association. Any hearing shall take place before a recognized arbitration association located in Boston, Massachusetts with the cost thereof being paid equally by all parties involved.



Judgement upon the award rendered may be entered in any court of competent jurisdiction.



13. **Governing Laws and Jurisdiction:** As to all construction or interpretation of the terms of this Appendix III, the l. of

_MASSACHUSETTS_
(Name of State)

shall apply. The Franchisee agrees, by the execution of this Appen. III, to submit himself/herself to the personal jurisdiction of the courts of the said state.

## NOTICE TO THE FRANCHISEE

**THIS APPENDIX HAS BEEN PREPARED AS A SEPARATE PART OF THE FRANCHISE AGREEMENT IN ORDE TO EMPHASIZE TO YOU THE IMPORTANCE OF THE SPECIAL COVENANTS HEREIN**

The parties hereto hereby confirm that they have carefully read this Appendix III and fully understand and agree to its term.

_Wayne Ef_
Franchisor

_Scott Ebluf_
Franchisee

**APPENDIX III**         **RESTRICTIVE COVENANTS**

1.    **Interpretation**:   In this Appendix, including in this section.

    (a)    All capitalized words have the meanings assigned to them in the Franchise Agreement or in this section;

    (b)    "Painting Business" means any business which involves painting interiors and exteriors of residential, commercial, or industrial buildings.

    (c)    "Competing Painting Business" means any Painting Business located or to any extent carried on within:

        i.    the Franchisee's Franchise Area;
        ii.    the Franchise Area of anyone franchised by the Franchisor to carry on a painting business;
        iii.    10 miles from the boundaries of any Franchise Area mentioned in paragraph (a) or (b) above;

    (d)    "Engage in any Competing Painting Business" means to be involved directly or indirectly to any extent in any Competing Painting Business, including, without limitation, be the proprietor of, or be a partner, employee, shareholder, promoter, franchisor, licensor, or financier of or a consultant or advisor to any firm or corporation which is engaged in, any Competing Painting Business.

    (e)    "Confidential Information" means all types of confidential information divulged to or obtained by the Franchisee as a result of his/her being a Franchisee of the Franchisor including, without limitation, all methods, systems, processes, trade secrets, Manuals, customer lists, and supplier lists.

    (f)    The "Special Covenants" mean the Franchisee's covenants in sections 2, 3, 4 and 5 of this Appendix.

2.    **Non-Competition:**  The Franchisee shall not engage in any Competing Painting Business during the Franchise Period nor for a period of one (1) year from the expiration hereof.

3.    **Non-Disclosure:**  Except as expressly permitted by the Franchise Agreement, the Franchisee shall not during the Franchise Period nor for a period of one year (1) from the expiration thereof, disclose to any third party and Confidential Information obtained by him or her while a Franchisee.

4.    **Non-Solicitation:**  The Franchisee shall not during the Franchise Period nor for a period of one year (1) from the expiration thereof:

    (a)    Solicit or induce any person who was an employee of the Franchisee or any other franchisee during the Franchise Period, to perform services for a Painting Business; or

    (b)    Solicit as a customer for a Painting Business, or perform services as part of a Painting Business for any person, firm, or company who, during the Franchise Period, either was a customer of the Franchisee or who received a painting estimate/proposal for painting from the Franchisee.

5.    **Return of Materials**:    The Franchisee promises to return to the Franchisor, forthwith upon the expiration of the Franchise Period or upon an earlier termination of the Franchise Agreement, all printed and audio-visual instructional material supplied by the Franchisor, including without limitation, the   Operation Manual(s), Manager's Working Binder, Client Manual, Warranty Manual/Records, Landed proposals (including rough estimate sheets) and all other material concerning the procedures, techniques and methods of the Franchisor.

6.    **Restrictions upon Employees of the Franchisee:**    The Franchisee agrees to cause each of its employees, at the time of their employment, to execute a Secrecy and Confidentiality Agreement in such form as is prescribed by the Franchisor and to use its best efforts to prevent any such person from violating such agreement, to notify Franchisor of any known   violations of such agreement and to cooperate with the Franchisor to protect the rights and to the extent not barred by applicable law, to terminate the employment of any person who knowingly breaches the such agreement.

7.    **Acknowledgment of Corporate Franchise:**    In the event the Franchisee is a corporation, the Franchisee covenants and agrees to deliver to the Franchisor at such time as it may request, the written acknowledgement of such directors, officers, shareholders or employees of the Franchisee, as the as the Franchisor shall in its discretion determine, acknowledging that they have reviewed the provisions of this Appendix and that they agree to abide by and be bound by all such provisions.

8. **Acknowledgements:** The Franchisee understands and acknowledges that:

   (a) the Special Covenants are vitally important to the Franchisor, the Franchisee and the Franchisor's other franchisees;

   (b) the Franchisor requires that all of its franchisees sign the Special Covenants;

   (c) the Franchisor's franchising network cannot successfully operate to the benefit of the Franchisor and all franchisees unless the Franchisor can require that the franchisees strictly comply with the Special Covenants;

   (d) if the Franchisor cannot stop franchisees from breaching the Special Covenants, the benefits contracted for by the franchisees when agreeing to become franchisees will be severely diminished;

   (e) therefore these Special Covenants are for the mutual benefit of the Franchisor, the Franchisee and all other franchisees;

   (f) should the Franchisee or any other franchisee breach the Special Covenants, the Franchisor, its system and its franchisees will suffer both financial loss and loss of goodwill; and

   (g) the Franchisor fully intends to enforce the Special Covenants.

9. **Enforcement:** The Franchisee therefore agrees that:

   (a) the Special Covenants are reasonable and necessary to protect the interests of the Franchisor, the Franchisee and all the other franchisees; and

   (b) the integrity of the franchising network requires that the Franchisor be able to stop franchisees from breaching the Special Covenants; and

10. **Further Provisions:** The Franchisee agrees that:

   (a) the Special Covenants shall be binding on and enforceable against him/her even if the Franchise Agreement is terminated by the Franchisor during the Franchise Period;

   (b) the Special Covenants are reasonable in their entirety. However, if the Special Covenants or any part thereof are found by a court of competent jurisdiction to be invalid or unenforceable to any extent, the invalid or unenforceable part shall be considered as severable from the remainder of the Special Covenants, and the remainder shall remain valid and enforceable; and

   (c) the Franchisor may assign all or any part of the benefit of the Special Covenants.

11. **Remedies:**

   (a) Liquidated Damages - The Franchisor and Franchisee agree that the damages the Franchisor will suffer as a result of any breach of the covenants contained in paragraphs 2, 3, and 4 of this Appendix III will be difficult and time consuming to calculate. Accordingly, the Franchisor and the Franchisee agree that the Franchisee shall pay the sum of twelve thousand ($12,000) dollars to the Franchisor as liquidated damages for any breach of the covenants contained in said paragraphs 2, 3 and 4, said liquidated damages being in lieu of any further monetary damages claimed by the Franchisor.

   (b) Injunctive Relief - In addition to the liquidated damages described in paragraph 11 (a) above, the Franchisor shall be entitled to obtain injunctive relief restraining the Franchisee from continuing to breach the covenants contained in paragraph 3 of this Appendix III.

12. **Arbitration:** Any controversy or claim arising out of, or relating to, this Appendix III or breach thereof shall be settled by arbitration, in accordance with the governing rules of a recognized arbitration association. Any hearing shall take place before a recognized arbitration association located in Boston, Massachusetts with the cost thereof being paid equally by all parties involved.

Judgement upon the award rendered may be entered in any court of competent jurisdiction.

13.    **Governing Laws and Jurisdiction**:    As to all construction or interpretation of the terms of this Appendix III, the laws
of

_____MASSAchvselts_____ shall apply.  The Franchisee agrees, by the execution of this Appendix
(Name of State)

III, to submit himself/herself to the personal jurisdiction of the courts of the said state.


## NOTICE TO THE FRANCHISEE

**THIS APPENDIX HAS BEEN PREPARED AS A SEPARATE PART OF THE FRANCHISE AGREEMENT IN ORDER
TO EMPHASIZE TO YOU THE IMPORTANCE OF THE SPECIAL COVENANTS HEREIN**


The parties hereto hereby confirm that they have carefully read this Appendix III and fully understand and agree to its terms.

_____                    X _____
Franchisor                                       Franchisee

Initials _____